Filed 10/7/24  P. v. Geason CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br> ROBERT GERROD GEASON II,<br><br>  Defendant and Appellant. | B333478<br><br>(Los Angeles County<br>Super Ct. No. KA127534) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan C. Dominguez, Judge.  Affirmed as modified.

James M. Crawford, under appointment by Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jason Tran and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

A jury convicted Robert Gerrod Geason II (defendant) of battery resulting in serious bodily injury and willful infliction of corporal injury in the context of a dating relationship in violation of Penal Code sections 243, subdivision (d)[1] and 273.5, subdivision (a), respectively, after he picked up and slammed Dong Doe (Dong) headfirst onto a concrete surface, resulting in her suffering traumatic brain injury and other impairments. Defendant appeals his convictions, arguing that the trial court erred in admitting evidence of prior uncharged acts under Evidence Code section 1109, which codifies a statutory exception to the general ban on propensity evidence when the charged offenses involve domestic violence. Specifically, defendant contends the trial court abused its discretion by admitting evidence that defendant once punched Dong in the face while she was driving and that he repeatedly stole the side mirror from her car. Defendant further contends the car-part theft was not a prior act of "domestic violence" within the meaning of Evidence Code section 1109. We affirm as modified (1) to strike the restitution fines, which the trial court did not orally impose, from the abstract of judgment; and (2) to add the mandatory court fees to the trial court's oral pronouncement, consistent with the abstract of judgment.

**FACTS AND PROCEDURAL BACKGROUND**

I. **Facts**

According to the evidence presented at trial, Dong and defendant met in 2018 and dated for five to six months during 2020. At some point, Dong "tried to break up with [defendant] because he hid[] . . . his background" from her. Approximately

---

[1] All further statutory references are to the Penal Code unless other indicated.

three or four months after they began their relationship, defendant became aggressive with Dong, including, on one occasion, punching her in the face while she was driving. Defendant also began showing up to Dong's home unannounced in the early hours of the morning. After her car's right side-view mirror was stolen three times, Dong confronted defendant about the thefts.

One of Dong's text messages to defendant read, "[in] all honesty, I feel so miserable waking up knowing I still have to keep in contact with you so you don't keep damaging [my property] and calling my work place. I really hope you'll find someone else and fall in love with another girl soon." Dong complained in another text message that the cost of replacing the repeatedly removed car mirror had risen from $200 to $550. Defendant responded, "It will get taken care of. Don't trip." Dong texted defendant, "all the kissing and hugging really isn't worth getting my car damaged and more troubles in the future. I just want to focus on work and my mom." Defendant told Dong, "Let me know the total and I'll bring you the cash at Cal Poly [Pomona] and [] that will be it. I'm tired of back and forth."

Dong agreed to meet defendant at Cal Poly on May 4, 2021, so that defendant could give her $500 to replace her mirror. Dong arrived at the parking lot in front of the bookstore, hid her phone in her car to prevent defendant from destroying it, and walked to meet defendant. Defendant approached Dong, and demanded that she tell him where her phone was. Dong responded that she had left her phone at home, and defendant proceeded to search her backpack. Not finding the phone, defendant walked to Dong's car, and Dong followed him. Dong's next memory was waking up in a hospital.

A Cal Poly bookstore employee witnessed defendant and Dong yelling at each other, and heard defendant say, "Give me the keys bitch," in a "hostile and aggressive tone." The arguing ended, and "the two of them turned around and started walking in opposite directions. And then [defendant] stopped and turned back around[,] . . . moved into a crouched position and started moving back towards [Dong]. And she didn't seem to notice that he was coming." Defendant "grabbed [Dong] from behind" in a "bear hug," and the two struggled for a couple of seconds. Defendant then "picked her up and . . . threw her onto the floor," causing "a dull thud on the concrete," followed by silence.

Dong sustained fractures to various parts of her skull and suffered a traumatic brain injury. Her brain was so swollen that a large part of her skull had to be removed, and a band connecting the brain's hemispheres cut, so that the brain could fall out of the skull's base until the swelling subsided. When these measures failed to control the swelling, the neurosurgeon "took out a clot from her left temporal lobe . . . [and] remove[d] some of her bruised and dead brain to make more space." Dong's treating physicians induced a medically necessitated coma. As a result of the attack, Dong's left limbs "do not work as well as the right," and her personality has changed. According to her neurosurgeon, "She will never make a full recovery."

II.    **Procedural Background**

The People charged defendant with one count of battery with serious bodily injury (§ 243, subd. (d); count 1), and one count of injuring a dating companion resulting in a traumatic condition (§ 273.5, subd. (a); count 2). The People further alleged, as to the first count, that defendant personally inflicted great bodily injury under circumstances involving domestic violence

4

(§ 12022.7, subd. (e)), and, in connection with both counts, that, as contemplated by California Rules of Court, rule 4.421: the crimes involved great violence or other acts disclosing a high degree of cruelty, viciousness, or callousness (*id.*, subd. (a)(1)); Dong was a particularly vulnerable victim (*id.*, (a)(3)); defendant engaged in violent conduct indicating a serious danger to society (*id.*, subd. (b)(1)); defendant has suffered prior convictions as an adult and sustained petitions in juvenile dependency proceedings that are numerous and of increasing seriousness (*id.*, subd. (b)(2)); and defendant previously performed unsatisfactorily on probation, mandatory supervision, post release community supervision, and parole (*id.*, subd. (b)(5)).

The matter proceeded to trial by jury, and the jury found defendant guilty of both counts. It further found true all allegations under California Rules of Court, rule 4.421. The trial court sentenced defendant to nine years in state prison on count 2, comprised of a four-year base term, plus five years for the enhancement under section 12022.7, subdivision (e) for great bodily injury involving domestic violence, and stayed the sentence imposed under section 654 for count 1.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant argues that the trial court erred in admitting the uncharged acts of domestic violence—theft of Dong's car mirror, and defendant's punching her while she drove. He further argues that the fines and fees reflected in the minute order and abstract of judgment must be stricken because the trial court failed to orally impose them.

5

## I. Uncharged Acts Admitted Under Evidence Code Sections 1109 and 352

Defendant contends the trial court erred in admitting evidence of his past uncharged acts of domestic violence because the probative value was substantially outweighed by undue prejudice (Evid. Code, § 352) and, additionally, with respect to the car mirror thefts, that the uncharged acts were not "domestic violence" under Evidence Code section 1109. Defendant's argument regarding applicability of Evidence Code section 1109 to the car mirror thefts raises a question of statutory interpretation subject to de novo review. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 294.) We review the trial court's rulings on Evidence Code section 352 for abuse of discretion. (*People v. Story* (2009) 45 Cal.4th 1282, 1295.)

### A. Governing Principles

Generally, "evidence of a person's character or a trait of his . . . character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his . . . conduct) is inadmissible when offered to prove his . . . conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) However, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by section 1101 if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1109, subd. (a)(1).) Section 1109 of the Evidence Code "reflect[s] the Legislature's determination that in . . . domestic violence cases, 'similar prior offenses are uniquely probative of a defendant's guilt on a later occasion.'" (*People v. Robinson* (2024) 99 Cal.App.5th 1345, 1352.)

**B.** *Defendant's Theft of Dong's Mirror Qualifies as "Domestic Violence" Under the Statutory Definition*

Evidence Code section 1109, defines "domestic violence" as having the meaning set forth in section 13700, and, "if the act occurred no more than five years before the charged offense," additionally has the meaning set forth in Family Code section 6211. (Evid. Code, § 1109, subd. (d)(3).) Family Code section 6211 defines domestic violence as "abuse" committed against someone with whom the perpetrator has had a dating relationship. The Law Revision Commission notes to Family Code section 6211 refer to Family Code Section 6203 for the definition of "abuse." Family Code section 6203, in turn, defines "abuse" to include "engag[ing] in any behavior that has been or could be enjoined pursuant to Section 6320," and expressly provides that "[a]buse is not limited to the actual infliction of physical injury or assault." (Fam. Code, § 6203, subds. (a)(4) & (b).) The behaviors listed in section Family Code section 6320 include "destroying personal property" and "disturbing the peace of the other party," (Fam. Code, § 6320, subds. (a) & (c).) "Section 1109 applies if the [uncharged] offense falls within the Family Code definition of domestic violence even if it does not fall within the more restrictive Penal Code definition." (*People v. Ogle* (2010) 185 Cal.App.4th 1138, 1144 (*Ogle*).)

The parties do not dispute that the uncharged acts occurred within five years of the charged offenses, making both the Family Code and the Penal Code definitions of "domestic violence" applicable. (*Ogle, supra*, 185 Cal.App.4th at p. 1143.)

7

Defendant's argument that the mirror theft does not qualify as "an act of domestic violence," is at odds with the express language of the Family Code definition, which provides that domestic violence includes "abuse," and that "abuse" is "not limited to . . . infliction of physical injury" and includes "destroying [the] personal property" of another. (Fam. Code, §§ 6203, subds. (a)(4), (b); 6320, subd. (a).) The evidence also indicates the repeated vandalizing of Dong's car, in addition to constituting a "destr[uction] [of her] personal property," was activity "disturbing the peace of the other party." (Fam. Code, § 6320, subds. (a) & (c); see *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 603 [disturbing the peace means " 'conduct that destroys the mental or emotional calm of the other party' "].)

### C. *Admitting Evidence of Prior Uncharged Acts Was Within the Trial Court's Discretion*

Under Evidence Code section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

Here, the uncharged conduct was squarely within the parameters of Evidence Code section 1109 and the risk of undue prejudice was minimal, particularly given the extreme brutality of the charged offense and the substantially lower level of harm inflicted by the uncharged acts. (See *People v. Mani* (2022) 74 Cal.App.5th 343, 372 [incidents that were "not significantly more inflammatory than the charged offenses" posed no substantial danger of undue prejudice]; accord *People v. Case* (2018) 5 Cal.5th 1, 31-32.) Nor are we persuaded by defendant's argument that

8

the evidence of prior uncharged acts posed "a substantial risk the jury would confuse the issues and punish [defendant] . . . for [] unproven allegations." (See *People v. Wilson* (2023) 89 Cal.App.5th 1006, 1014 ["Jurors are credited with intelligence and common sense," and "[w]e 'presume they generally understand and follow the instructions' "].)

Having concluded there was no error, we decline to address the parties' arguments on whether any error was harmless.

## II.    Fines and Fees

Defendant argues  the fines and fees set forth in the abstract of judgment—$300 restitution fine, $300 parole revocation fine, $80 court operations assessment, and $60 criminal conviction assessment—must be stricken because the trial court did not impose them during its oral pronouncement of judgment at the sentencing hearing. "Courts may correct clerical errors at any time, and appellate courts . . . that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

The People concede the two $300 fines should be stricken in view of their omission from the trial court's oral pronouncement, and we agree. We likewise agree with the People's position that the required fee assessments of $60 and $80 may remain (see *People v. Sencion* (2012) 211 Cal.App.4th 480, 484-485 [modifying oral pronouncement to impose court fees consistent with the abstract of judgment].)

9

## DISPOSITION

The abstract of judgment is modified to strike the $300 restitution fine and the $300 parole revocation fine. The judgment is otherwise affirmed.

DAVIS, J.[*]

We Concur:

BAKER, Acting P. J.

MOOR, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6 of the California Constitution.

10